## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MARY ANN ROBERTS,** | ) | **Bankruptcy No. 21-20618-JAD** |
| | ) | |
| Debtor. | ) | **Chapter 7** |
| _____ X | ) | |
| | ) | **Related to ECF No. 82** |
| **MARY ANN ROBERTS,** | ) | |
| | ) | |
| Movant, | ) | FILED |
| | ) | 5/8/24 11:41 am |
| - v - | ) | CLERK |
| | ) | U.S. BANKRUPTCY |
| **ANDREW R. VARA,** | ) | COURT - WDPA |
| **U.S. TRUSTEE FOR REGIONS** | ) | |
| **3 & 9, ROSEMARY C.** | ) | |
| **CRAWFORD, in her capacity** | ) | |
| **as Chapter Trustee, and** | ) | |
| **AMA SUPPORT SERVICES, LLC,** | ) | |
| | ) | |
| Respondents. | ) | |
| _____ X | | |

APPEARANCES:   David M. Kobylinski, Esquire, for Mary Ann Roberts
Robert B. Stein, Esquire, for AMA Support Services, LLC
Rosemary C. Crawford, Esquire, Chapter 7 Trustee
Joseph P. Schalk, Esquire, for the United States Trustee

## MEMORANDUM OPINION

## I.
## Introduction

In the context of a *Motion to Reopen* filed by the above captioned debtor (Mary Ann Roberts), this case delves into the dynamics of bankruptcy law, focusing on the duty of debtors to fully disclose assets and the exclusive right of a chapter 7 trustee to administer property of the estate for the benefit of all creditors.  Central to the matter before the Court are the issues of whether Mary

Ann Roberts' bankruptcy case should be reopened due to her willful concealment of an asset of the bankruptcy estate (hereinafter referred to as the "<u>AMA Action</u>"), and whether Ms. Roberts' concealment of the AMA Action gives rise to judicial estoppel thereby precluding the administration of the asset by a chapter 7 trustee.

Upon consideration of the factual and legal context of the *Motion to Reopen*, and with due regard to the policy considerations related to the same, the Court exercises its equitable discretion and finds that cause exists to grant the *Motion to Reopen* to permit the chapter 7 trustee to administer the AMA Action.

## II.
## <u>Background</u>

Mary Ann Roberts initiated this Chapter 7 bankruptcy case on March 18, 2021. She filed her bankruptcy petition and prosecuted this case *pro se* (that is, without the assistance of counsel), which is not a simple task by someone without legal experience or legal education.

The undisputed record reflects that Ms. Roberts has a high school education, but struggled with the filing of the necessary paperwork to complete her Chapter 7 bankruptcy. By way of example, at one point in time she filed schedules of liabilities that reflected zero creditors. <u>See</u> ECF No. 17 at pp. 5-24.[1] Obviously this was a mistake since she petitioned for bankruptcy relief in the first

---

[1] The Court takes judicial notice of both the docket in this case and the statements made by Ms. Roberts in the petition and related documents she filed with the Court. <u>See</u> Fed.R.Evid. 201; <u>see</u> <u>Maritime Elec. Co., Inc. v. United Jersey Bank</u>, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); <u>Levine v. Egidi</u>, 1993 WL 69146, at *2 (N.D.Ill.1993); <u>In re Paolino</u>, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); <u>see generally</u> <u>In re Indian Palms Associates, Ltd.</u>, 61 F.3d 197 (3d Cir.1995).

instance and could not afford to pay the filing fee. <u>See</u> ECF No. 7.

The forms used by Ms. Roberts were a mish-mash of forms– some of which are presently approved by the Administrative Office of the United States Courts and others which are no longer approved or authorized. <u>Id</u>.

That Ms. Roberts had difficulty completing her filings is readily apparent in the docket maintained by the Clerk's Office.  Illustrating the confusion, the docket in this case indicates a myriad of filings made by Ms. Roberts that are error filled and/or are confusing.

For example, the docket reflects that Ms. Roberts' initial bankruptcy petition has been amended at least twice. <u>Compare</u> ECF No. 1 with ECF Nos. 6 and 15. She also had to amend her application for waiver of the filing fee at least once. <u>See</u> ECF No. 7.  She had to amend her mailing matrix on three occasions. <u>Compare</u> ECF No. 4 with ECF Nos. 5, 13, and 14. She had extensive problems filing her schedules of assets, exemptions, and liabilities. <u>See</u> ECF Nos. 16, 17, 24, 30, 33, 36, 38, 68, 69, and 70). And, she received at least seven notices of deficiencies and/or non-conforming document warnings from the Clerk's Office.  <u>See</u> ECF Nos. 10, 19, 29, 34, 39, 46 and 71.

To add to the problems associated with the filing and prosecution of this case, the record reflects that the Chapter 7 was filed during the pendency of the Covid-19 Pandemic and Ms. Roberts contracted the virus at some point during the pendency of the case. <u>See</u> ECF No. 63 (where Ms. Roberts explained that she missed her Section 341 Meeting with creditors due to contracting covid); <u>see also</u>

Cty. of Allegheny v. The Cracked Egg, LLC (In re Cracked Egg), 624 B.R. 84, 86-87 (Bankr. W.D. Pa 2021)(describing the Covid-19 Pandemic).

Examining the filings made by Ms. Roberts, it appears that much of them are "head scratchers."  For example, after initially filing schedules reflecting no creditors, Ms. Roberts filed numerous amendments including an amended *Schedule E/F: Creditors Who Have Unsecured Claims* at ECF No. 38.  In this amendment, Ms. Roberts identified 8 creditors to whom she owed $26,293.16 in aggregate.  This schedule also identified another 9 creditors "to be notified."  As to the creditors whose debts were specifically listed, one was named "P.O. Box 607," an obvious error in identification.

Thereafter, at ECF No. 68, Ms. Roberts filed another list of creditors utilizing an outdated form entitled *Schedule F-Creditors Holding Unsecured Nonpriority Claims*.  In this document she identifies 9 creditors owed in aggregate $3,217.60, and miscalculates the aggregate debt as being "$21.04."  Ms. Roberts also fails to identify in this filing the name of one creditor, double counts the claim of Credit Collection Services, and perhaps duplicates some of the creditors which Ms. Roberts identified as parties "to be notified" in the filing previously docketed at ECF No. 38.  This recitation of the confusion in Ms. Roberts schedules of debts is not intended to be exhaustive.  Rather, it highlights her struggle in preparing the documentation required by the Bankruptcy Code, Bankruptcy Rules, and Local

Rules of this Court.[2]

Ms. Roberts' struggles were in no way confined to her schedule of debts. For example, in *Schedule A/B: Property* filed by Ms. Roberts at ECF No. 30, she identified her ownership interest in a motor vehicle but did not identify the value of it. Since the vehicle was a 2008 model year vehicle with over 200,000 miles, the Court can assume that the value of the automobile was not significant. She also identified in this schedule everyday clothes, jewelry, and one dog, yet did not assign a guestimated value as to these items. She also identified household goods and furnishings valued at $600, one television valued at $400, and a checking account having $100. See ECF No. 30 at pp. 2-5.

Given the descriptions of these assets, even with the failure to identify a stated value, a fair inference based upon what was filed by Ms. Roberts is that the value of these assets fall below the upper limits of the exemptions allowable under Section 522 of the Bankruptcy Code, 11 U.S.C. § 522. Notwithstanding this fact, the record reflects that Ms. Roberts filed *Schedule C: The Property You Claim as Exempt* at ECF No. 16, where she claimed no exemptions protecting her property from liquidation. This is a "head scratcher" because exempting property from liquidation is in her personal best interest, yet she did not claim any exemption whatsoever.

---

[2]  It appears that Ms. Roberts was also unable to complete the means test forms. See ECF No. 24 at pp.29-30. Given that her *Schedule I: Your Income* reflected monthly income of $400, see id. at pp. 17-18, the Court surmises that the United States Trustee concluded that Ms. Roberts did not have the means to repay creditors, did not want to waste resources in compelling Ms. Roberts to complete the form, and that there was no basis to challenge Ms. Roberts eligibility to be a debtor under Chapter 7.

Ms. Roberts' schedule of assets had a material omission, which is the focus of the *Motion to Reopen*. That is, in her schedules on file with the Court, Ms. Roberts failed to disclose her involvement as the plaintiff in the AMA Action, which is a lawsuit pending in the Court of Common Pleas of Allegheny County, Pennsylvania against her former employer alleging wrongful termination. Specifically, in response to interrogatories requesting information on "[o]ther amounts someone owes you" and "[a]ny claims against third parties," Ms. Roberts checked the box adjacent to the word "no." <u>See</u> ECF No. 30 at pp. 7-8 (interrogatory nos. 30 and 33).

Ms. Roberts' *Statement of Financial Affairs for Individuals Filing for Bankruptcy* also failed to disclose the existence of the AMA Action, despite the fact that this document required Ms. Roberts to identify all legal actions for which she is a party. <u>See</u> ECF No. 30 at p. 27. Toward this end, the document required Ms. Roberts to identify all legal actions "[w]ithin 1 year before [she] filed for bankruptcy . . . where [she is] a party." <u>Id</u>. And if such a lawsuit or proceeding was pending, Ms. Roberts was asked to further identify the proceeding by supplying the "case title," "case number," "nature of the case,"and "court or agency" before which the case was filed, and "status of the case." <u>Id</u>. All of this identifying information was left blank by Ms. Roberts because she checked the box adjacent to the word "no," <u>id</u>., thereby affirmatively indicating that no such case or proceeding exists (when the opposite is true).

After Ms. Roberts commenced her bankruptcy case, Rosemary Crawford,

Esquire was appointed chapter 7 trustee (the "Chapter 7 Trustee").

At the hearing held on the *Motion to Reopen*, the Chapter 7 Trustee informed the Court that she keeps contemporaneous notes of the meeting of creditors presided over by her pursuant to 11 U.S.C. § 341. Based on those notes, the Chapter 7 Trustee further advised the Court that the Chapter 7 Trustee examined Ms. Roberts under oath at the Section 341 meeting. When Chapter 7 Trustee asked Ms. Roberts at the Section 341 meeting whether she was a party to any lawsuit, Ms. Roberts answered the question with a "no."

Given the content of the schedules and statement of financial affairs, all filed by Ms. Roberts under penalty of perjury, and given Ms. Roberts' sworn testimony at the Section 341 meeting, the Chapter 7 Trustee declared that this bankruptcy case is a "no asset" case and proceeded to close out the administration of this estate without having the opportunity to examine and prosecute the AMA Action and without having any funds for distribution to creditors.[3]

Of course, we now know that Ms. Roberts' representations were not true. In the AMA Action, Ms. Roberts was (and is) represented by counsel. The AMA Action was filed several months before Ms. Roberts filed for bankruptcy, and counsel was not aware of the bankruptcy filing. As a result, counsel was not in

---

[3] At the hearing on the *Motion to Reopen*, and in the pleadings filed in connection with the same, it has been represented that the damages sought in the AMA Action equal or exceed $67,000– which if recovered would be enough to pay creditors in full.

a position to inform this Court of the pendency of the AMA Action before the bankruptcy process concluded with a discharge in favor of Ms. Roberts under 11 U.S.C. § 727(a) on December 13, 2021 and before a final decree was entered by this Court on December 28, 2021.  In fact, it appears that counsel representing Ms. Roberts in the AMA Action did not learn of his client's bankruptcy filing until documents were produced by Ms. Roberts, and provided to AMA, on the eve of jury selection.

Armed with information indicating Ms. Roberts failed to disclose assets to this Court, AMA immediately filed a motion with the state court asking that the AMA Action be dismissed on judicial estoppel grounds.  Judge Michael Della Vecchia of the Court of Common Pleas of Allegheny County, however, deferred decision on the motion to dismiss to afford Ms. Roberts an opportunity to "get the bankruptcy issues resolved" because property that is not scheduled and not administered by a bankruptcy trustee remains property of the bankruptcy estate even after a bankruptcy case is closed. See 11 U.S.C. § 554(d) and Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 465 (6th Cir. 2013); see also *Response of AMA Support Services, LLC in Opposition to Debtor's Motion to Reopen* at para. 10 (ECF No. 87).

Thereafter, Ms. Roberts was unable to file the *Motion to Reopen* on her own (for various reasons which are not entirely clear).  The trial lawyer representing Ms. Roberts in the AMA Action (who admittedly is not a lawyer specializing in bankruptcy) then agreed to file the *Motion to Reopen* on behalf of Ms. Roberts.

-8-

The *Motion to Reopen* was filed on February 14, 2024, and is supported by the Chapter 7 Trustee and the Office of the United States Trustee.   AMA vigorously opposes the motion.

After the Court ordered briefing of the issues raised by the *Motion to Reopen* and AMA's objection thereto, the Court held a hearing on May 1, 2024.   At the hearing, it became clear that the facts are largely not in dispute, and that no further hearing (evidentiary or otherwise) is necessary for the Court to decide the merits of the *Motion to Reopen*.[4]   This *Memorandum Opinion* is the result of these proceedings, and constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## III.
## Discussion

### A.
### Factors Are Present Which Support Reopening This Case

The *Motion to Reopen* is predicated upon Section 350(b) of the Bankruptcy Code, which provides that a bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." See 11 U.S.C. § 350(b)).

---

[4]   Courts have held that bankruptcy courts may rule on motions to reopen without holding a hearing.  For example, the 7th Circuit Court of appeals observed:

> As a matter of law, there is no question that bankruptcy courts may rule on motions to reopen without a hearing. See In re Jones, 261 B.R. 479, 483 (Bankr.N.D.Ala.2001) (denying a motion to reopen without a hearing). Further, § 350(b) of the Bankruptcy Code, which governs the closing and reopening of cases, makes no provision for hearings or other procedures available to debtors. 11 U.S.C. § 350(b) (2006).

Redmond v. Fifth Third Bank, 624 F.3d 793, 799 (7th Cir. 2010).

The prerogative to reopen a closed case rests within the Court's sound discretion, and this discretionary power has been reaffirmed by the Third Circuit Court of Appeals in In re Lazy Days' RV Ctr., Inc., 724 F.3d 418, 422-23 (3d Cir. 2013); see also Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997); Judd v. Wolfe, 78 F.3d 110, 116 (3d Cir.1996); Matter of Case, 937 F.2d 1014, 1018 (5th Cir.1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings."); Hawkins v. Landmark Finance Co., 727 F.2d 324 (4th Cir.1984); Matter of Becker's Motor Transportation, Inc., 632 F.2d 242, 245 (3d Cir.1980); Urbanco, Inc. v. Urban Systems Streetscape, Inc., 111 B.R. 134 (W.D.Mich.1990).[5]

The sole basis articulated in the *Motion to Reopen* for relief under Section 350(b) is to enable the Chapter 7 Trustee to administer a previously undisclosed asset (i.e., the AMA Action), which as a matter of law remains property of the bankruptcy estate. See 11 U.S.C. §§ 541(a)(1) and 554(d).  This basis plainly supports granting the *Motion to Reopen* because "[i]t is well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate." In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005); cf. Fink v. Edgelink, Inc., 553 F. App'x 189, 195 (3d Cir. 2019).

---

[5]  The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving party. See In re Cloninger, 209 B.R. 125, 126 (Bankr.E.D.Ark.1997); In re Nelson, 100 B.R. 905 (Bankr.N.D.Ohio 1989).

The impact of reopening Ms. Roberts' bankruptcy case goes beyond whatever residual benefit the debtor may have in the AMA Action. Reopening benefits other constituencies, namely the unsecured creditors of the estate whose debts or claims remain unpaid.

All parties-in-interest to this bankruptcy case potentially stand to gain from having the Chapter 7 Trustee administer the AMA Action. Absent reopening, the creditors would gain nothing since all creditor claims were discharged and the Chapter 7 Trustee would be deprived of administering the estate asset. The balance of these equities alone supports the granting of the *Motion to Reopen*.

For purpose of completeness, this Court recognizes that courts have considered various factors in determining whether to reopen a closed bankruptcy case. See, e.g., Reinert v. Vara, 620 B.R. 536, 543 (W.D. Pa. 2020). Those factors include, but are not limited to, the following:

> (1) the length of time the case has been closed; (2) whether the [moving] party may obtain relief in an alternative forum; (3) whether any party would be prejudiced by the reopening of the bankruptcy case; (4) any benefit that may accrue to the debtor as a result of reopening; and (5) whether, if the case was reopened, the [moving] party is entitled to any relief.

In re Eppolito, 617 B.R. 249, 251 (Bankr. E.D. Pa. 2020)). Additionally, a bankruptcy case should not be reopened if it would be futile or a waste of judicial resources to do so. Redmond v. Fifth Third Bank, 624 F.3d at 803.

These factors, when applied to the present case, unequivocally support the reopening of Ms. Roberts' bankruptcy case to allow a Chapter 7 Trustee to

administer the AMA Action for the benefit of unsecured creditors.

As to timing, Ms. Roberts' *Motion to Reopen* was submitted approximately two years following the closure of her bankruptcy case.  Section 350(b) of the Bankruptcy Code does not set a specific time limit for reopening cases. Legal precedent demonstrates instances where bankruptcy cases have been reopened after longer or extended periods of time, particularly when there is evidence suggesting incomplete administration of estate assets. <u>See</u>, <u>e.g.</u>, <u>Stackhouse v. Plumlee (In re Plumlee)</u>, 236 B.R. 606 (E.D. Va. 1999) (holding bankruptcy court did not abuse its discretion by granting motion to reopen chapter 7 debtor's bankruptcy case five years after it was closed).  Therefore, the elapsed time of just over two years should not hinder the reopening of Ms. Roberts' bankruptcy case, and no party has produced any evidence or compelling argument suggesting otherwise.

As to benefits of reopening, because the AMA Action is considered part of the bankruptcy estate, it is best for the Chapter 7 Trustee to administer it. The Court reaches this conclusion because the Chapter 7 Trustee is a neutral and fair fiduciary responsible for safeguarding assets for the benefit of creditors. <u>See</u> 11 U.S.C. § 704.

Even though the state court will adjudicate the merits of the AMA Action, having this estate asset managed by the Chapter 7 Trustee is appropriate because any money recovered would be distributed to creditors by way of orders of this Court in accordance with the priority scheme set forth in the Bankruptcy Code.

<u>See</u> 11 U.S.C. § 726.

As to prejudice, reopening Ms. Roberts' bankruptcy case will cause no harm to neither AMA nor any party in interest, because the reopening of the AMA Action is a ministerial action which is not a final adjudication of either the merits of the AMA Action or any defenses AMA may have to the same.

Yet, the estate's creditors stand to benefit if the bankruptcy case is reopened and monetary recoveries are realized as a result of the AMA Action. Conversely, if the bankruptcy case isn't reopened, the creditors—who during the pendency of the bankruptcy case didn't know that there is an asset which may be the source of recoveries—would lose out because chances of recovery evaporate.

As to whether the debtor would obtain an unfair advantage or benefit, reopening Ms. Roberts' bankruptcy case is appropriate in light of the potential ramifications of her non-disclosure of the AMA Action. Should the case remain closed and the debtor prevail in the AMA Action, Ms. Roberts could potentially profit from her failure to divulge this asset during bankruptcy proceedings, thereby circumventing her obligation to distribute proceeds to creditors.[6] In

---

[6] Contrary to the strident posture taken by AMA, the application of judicial estoppel against Ms. Roberts is not a "slam dunk." Absent reopening of this bankruptcy case and permitting the substitution of the Chapter 7 Trustee as plaintiff, Ms. Roberts would contend that her false filings were "inadvertent" or "excusable" based upon the confusion occasioned by her *pro se* status. In addition, Ms. Roberts has contended in her papers that she suffered a great deal of anxiety and emotional stress at the time she completed her bankruptcy paperwork. The necessity of the state court to have a trial within a trial regarding these matters is lessened (or possibly prudentially avoided) by this Court granting the *Motion to Reopen* and having the Chapter 7 Trustee substituted as a party plaintiff. Of course, the ultimate legal decision as to whether the judicial estoppel claims have been nullified will be left to Judge Della Vecchia. The Court makes this observation because this Court's holding and decision herein is limited to the issue

(continued...)

contrast, if the Court opts to reopen the case and entrust a trustee with the administration of the AMA Action, any recovery obtained would rightfully prioritize the interests of creditors.

On this point, courts have held that when the objective of reopening a case is to address the administration of an omitted asset, any perceived advantage gained by a debtor through non-disclosure is nullified by the appointment of a trustee to oversee the assets' administration. In re Daniel, 205 B.R. 246, 349 (Bankr. N.D. Ga. 1997).

Thus, while the Court remains cognizant of Ms. Roberts' non-disclosure, the overarching imperative is to ensure the equitable distribution of assets amongst creditors. By reopening the case and affording the Chapter 7 Trustee the opportunity to administer and manage the AMA Action, the Court upholds the integrity of the bankruptcy process by safeguarding the interests of creditors.

Finally, as to futility, fair doubt exists as to whether AMA would be entitled to the defense of judicial estoppel under the facts and circumstances of this case. The Court discusses the merits of AMA's judicial estoppel defense more fully below.  Accordingly, the AMA Action is not patently futile and is ripe for trial by jury before the Court of Common Please of Allegheny County, Pennsylvania.

---

[6](...continued)
of whether this Court should utilize its gate keeping power to allow or disallow the reopening of the bankruptcy case in light of AMA's judicial estoppel arguments– and at the present time this Court lacks jurisdiction to decide the ultimate merits of the AMA Action.

**B.**
**Fair Doubt Exists As to the Viability**
**of the Judicial Estoppel Defense**

A prudential limitation to the court's equitable discretion to reopen a

bankruptcy case is the concept of futility.

A case should not be reopened where doing so would be futile or a waste of

judicial resources. See Redmond v. Fifth Third Bank, 624 F.3d at 803 (citing In

re Carberry, 186 B.R. 401, 402 (Bankr.E.D.Va.1995)). "If the moving party cannot

obtain the substantive relief which it intends to seek, then there is no reason to

grant a motion to reopen." In re Frazer/Exton Dev., L.P., 503 B.R.620, 635

(Bankr. E.D. Pa. 2013)(quoting First National Bank of Jeffersonville v. Goetz (In

re Goetz), 2009 WL 1148580, at *2 (Bankr. S.D. Tex. Apr. 29, 2009)(internal

quotations omitted)).

As a threshold matter, in order to justify the reopening of a closed case, a

question exists to the quantum of proof that a movant must provide in order to

overcome a claim of "futility."  After canvassing the case law, this Court has found

no extensive judicial decisions addressing this precise question.

Case law does provide that reopening of a case is a ministerial act that, in

and of itself, has no substantive effect. Reinert, 620 B.R. at 543; see also Cusano

v. Klein, 264 F.3d 936, 948 (9th Cir. 2001).  All that reopening of a case provides

is an opportunity for a litigant to seek substantive relief in the context of an open

bankruptcy case (with all of the protections attendant thereto). In re Congeleum

Corp., 636 B.R. 362, 377 (Bankr. D.N.J. 2022).

Stated in other words, the ultimate merits of underlying litigation is left for another day.  The logical result of this is that the burden of proof with respect to a "futility" contest, lodged in opposition to a reopening request, is not as robust as the burden of proof  accorded in the adjudication of the merits of the sought after litigation. See, e.g., In re Haskett, 297 B.R. 637, 644 (Bankr. N.D. Ala. 2003)(the strength or weakness of a non-bankruptcy forum defendant's case should not weigh in on the bankruptcy court's decision on a motion to reopen).

It would be absurd for the Court to conclude otherwise, and nothing in 11 U.S.C. § 350(b) requires the movant to fully prove the merits of its lawsuit twice (i.e., once before this Court in the context of reopening and then the second time before the tribunal having the requisite subject-matter jurisdiction to preside over the litigation).

This Court's conclusion is consistent with the language used by some courts in the context of a "futility" defense to a motion to reopen. For example, in In re Antonious, 373 B.R. 400 (Bankr. E.D. Pa. 2007), United States Bankruptcy Judge Bruce Fox held that reopening is not appropriate when it is "***clear at the outset*** that the debtor would not be entitled to any relief if the case were reopened." 373 B.R. at 405-06 (emphasis added).  This holding by Judge Fox suggests that any claimed "futility" must be patent from the outset, and not subject to reasonable dispute.

In another case, Arleax v. Arleax, 210 B.R. 148 (8th Cir. B.A.P. 1997), the Bankruptcy Appellate Panel for the Ninth Circuit held that where "a complaint is

*completely lacking in merit*, . . . it is not  an abuse of discretion to deny the motion to reopen." 210 B.R. at 149 (emphasis added).

A fair interpretation of the statements made by the courts in <u>Antonious</u> and <u>Arleax</u> is that the proponent of a motion to reopen must demonstrate that the chance of success in the underlying litigation is materially more than negligible, but need not be certain.  This standard is similar to the standard utilized in evaluating the "likelihood of success" component warranting the imposition of an injunction or stay pending appeal (which is also subject to the discretion of the court). <u>See</u> <u>e.g.</u>, <u>In re Revel AC, Inc.</u>, 802 F.32d 558, 568-69 (3d Cir. 2015); <u>In re Hardy</u>, 209 B.R. 371, 373 (Bankr.E.D.Va.1997) (in deciding a motion to reopen, the court "must determine if the underlying cause of action ... is ***likely*** to be sustained when considered on the merits")(emphasis added).

With this standard in mind, the Court finds that pursuit of the AMA Action is not futile.  The Court reaches this conclusion because it is undisputed that no party to the action has moved for, or obtained, summary judgment– which suggests that material disputes of fact exist which warrant taking the case to trial. Indeed, until such time Court of Common Pleas Judge Michael Della Vecchia put the case on hold in light of the discovery of the bankruptcy, the parties were at the jury selection phase of litigation.  This undisputed record supports the conclusion that the chances of success in the AMA Action are more than negligible, but are not certain.

In finding that the AMA Action is not futile, the Court has considered AMA's

defense of judicial estoppel and is not persuaded that the AMA Action should clearly be dismissed as a result of Ms. Roberts' concealment of the AMA Action.

Judicial estoppel is a broad, discretionary remedy which courts may invoke to protect the integrity of the judicial process. New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001). Because it is an equitable and discretionary remedy, its contours are not easily reduced to a fixed formula. Slater v. U.S. Steel Corp., 871 F.3d 1174, 1187 (11th Cir. 2017)("[e]quity eschews mechanical rules" and "depends on flexibility")(quoting Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946)).

Courts typically consider several factors when deciding whether to apply judicial estoppel. One factor is that a party's later position must be clearly inconsistent with its earlier position. See New Hampshire, 532 U.S. at 750. A second factor is "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. (internal quotations omitted). Another factor asks whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id.[7]

---

[7] The parties do not dispute that the factor relating to "judicial acceptance" of the inconsistent positions is present because Ms. Roberts received her discharge in bankruptcy. With respect to the factor of whether Ms. Roberts received an "unfair advantage" or whether the bankruptcy estate received an "unfair detriment," the parties have differences of opinion. A fair reading of the pleadings is that Ms.

(continued...)

Expounding on the equitable and discretionary nature of judicial estoppel, the Third Circuit Court of Appeals has held that the doctrine of judicial estoppel does not seek to eradicate all forms of inconsistency. In re Chambers Development Co., Inc., 148 F.3d 214 (3d Cir.1998). That is, the doctrine is not automatically applied in every case in which contradictory positions are asserted because judicial estoppel is "a fact-specific, equitable doctrine, applied at [the] courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010). And the doctrine "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims," nor is it "a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358, 365 (3d Cir. 1996)(internal

---

[7](...continued)

Roberts believes that any "unfair advantage" bestowed upon her as a result of the concealment, and any "unfair detriment" caused by the same, is nullified by reopening of this bankruptcy case and affording the Chapter 7 Trustee with an opportunity to administer the AMA Action. AMA disagrees, because simply permitting the Chapter 7 Trustee to administer the asset does not necessarily result in Ms. Roberts being held accountable for her conduct. While not expressly stated, AMA appears to suggest that if the case is reopened, the Chapter 7 Trustee could still exercise her business judgment and abandon it back to the debtor. In re Wilton Armetale, Inc., 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020)(trustee is afforded "wide discretion" in determining whether to abandon an asset); In re Truong, 557 B.R. 326, 340 (Bankr. D.N.J. 2016)(courts generally defer to the exercise of the trustee's business judgment). The Court certainly recognizes the concern raised by AMA, but notes that any business judgment exercised by the Chapter 7 Trustee must be made in good faith and upon some reasonable basis. In re Guru Glob. Logistics, LLC, 557 B.R. 842, 845 (Bankr. W.D. Pa. 2016). The Court further notes that, even if the AMA Action is abandoned, there are alternative sources of sanctions which could be imposed by the Court against Ms. Roberts in order to hold her accountable for her actions. Those sources of sanctions are addressed in the body of this *Memorandum Opinion*. In addition, at least one unreported decision exists which suggests that to the extent Ms. Roberts' stands to personally recover on account of the concealed cause of action, the state trial court may still judicially estop her from recovering on account of the claim (even though judicial estoppel would not apply to prevent the Chapter 7 Trustee from recovering against AMA). See Wiggins v. Citizens Gas & Coke Utility, Cause No. 1:03-cv-1882, 2008 WL 4530679 at *4 (S.D. Ind. Oct. 7, 2008).

-19-

quotation marks omitted).

In Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., the Third Circuit emphasized that judicial estoppel is appropriate when (1) a party has taken irreconcilably inconsistent positions, (2) the party to be estopped acted in bad faith with an intent to manipulate the court, and (3) because judicial estoppel is a sanction, it is to be narrowly applied only if no lesser sanction would suffice to redress the harm caused by the litigant's misconduct. Krystal Cadillac, 337 F.3d 314, 319-20 (3d Cir. 2003) (citing Montrose Medical Group, 243 F.3d at 779-80).

Sub judice, it is beyond dispute that Ms. Roberts has taken irreconcilable positions. In this regard, the Court is deeply troubled by the fact that Ms. Roberts affirmatively answered "no" to questions in her bankruptcy filings regarding the existence of actual and potential claims against third parties (which include the AMA Action). The Court is further troubled by the fact that Ms. Roberts also apparently denied the existence of any legal claims when examined under oath by the Chapter 7 Trustee.

Absent an adequate and credible explanation by Ms. Roberts regarding these matters,[8] it appears that Ms. Roberts violated the most sacred of duties imposed upon individuals seeking protection under the Bankruptcy Code. As one court aptly summarized these duties:

---

[8] While legal counsel was in the courtroom making arguments on her behalf, Ms. Roberts was not present at the hearing on the *Motion to Reopen*.

-20-

At the forefront, accurate disclosures are a foundational expectation of those seeking bankruptcy relief. <u>See</u> Fed. R. Bankr. P. 1008 (requiring verification or unsworn declaration for "[a]ll petitions, lists, schedules, statements and amendments thereto"); <u>In re Shelton</u>, 370 B.R. 861, 868 (Bankr. N.D. Ga. 2007) ("The easiest way to violate [the duty of good faith in bankruptcy] is to misrepresent, lie, or otherwise mislead the court."); <u>see also</u> <u>In re Russell</u>, No. 12-80537-WRS, 2012 WL 5934648, at *9 (Bankr. M.D. Ala. Nov. 27, 2012) (dismissing with prejudice and barring discharge of all future debts due to, among other reasons, a number of errors and omissions on Schedules and Statements leading to "questionable accuracy" of filings). A fresh start is only afforded to the honest, but unfortunate debtor. <u>Marrama v. Citizens Bank of Massachusetts,</u> 549 U.S. 365, 367 (2007). To obtain the benefits of bankruptcy and achieve a fresh start, debtors are tasked with an unavoidable duty and expectation of forthright disclosures. <u>See</u> 11 U.S.C. § 521; <u>In re White</u>, 618 B.R. 748, 754 (Bankr. E.D.N.C. 2020) ("[A] debtor must approach the bankruptcy process prepared to forthrightly abide by the Code's requirements, without purpose of evasion or in hopes of omitting required disclosures."). Section 521 lists Debtor's required disclosures, including creditors, assets, and liabilities. [. . .] <u>In re Lindsey</u>, 122 B.R. 157, 160 (Bankr. M.D. Fla. 1991) ("[T]he court and the creditors are entitled to full and accurate disclosure of the debtors' financial status.").

<u>In re DeVaughan</u>, Case No. 23-10150-BPC, 2023 WL 4356356 at * 3 (M.D. Ala. July 5, 2023); <u>accord</u> <u>In re Kane</u>, 628 F.3d at 636 and <u>Ryan Operations</u>, 81 F.3d at 362.[9]

With respect to whether Ms. Roberts acted in bad faith with an intent to

---

[9]   Assuming that the requisite level of materiality and intent is present, and absent a justifiable excuse, the conduct of Ms. Roberts also potentially implicates various provisions of title 18, including without limitation 18 U.S.C. §§ 152, 401, and 1621.

deceive the Court, her repeated denial of the existence of any legal claims lends

credence to a finding that Ms. Roberts' conduct was willful and purposeful.

The Court nonetheless extends caution in making this observation because

a *pro se* litigant is "entitled to special solicitude." <u>Fowlkes v. Ironworkers Local 40</u>,

790 F.3d 378, 387 (2d Cir. 2015) (quoting <u>Triestman v. Fed. Bureau of Prisons</u>,

470 F.3d 471, 477 (2d Cir. 2006)).  One can argue that this aspect of solicitude

is worthy of closer inspection because the record demonstrates that Ms. Roberts

did have apparent difficulty in filing her bankruptcy schedules and related

documents.

However, it is this Court's view that the solicitude afforded to *pro se* litigants

does not obviate the duty of all litigants (whether represented by counsel or not)

to be truthful in testimony and/or in sworn court filings. <u>White v. Hall</u>, No.

3:07cv461, 2009 WL 485475 at *1(S.D. Fla. Feb. 25, 2009)(litigant's "pro se status

does not excuse him from following the Federal and Local Rules of this Court, and

every litigant has a duty to provide truthful information to the court").

An argument can be had that Ms. Roberts' act of concealment was in bad

faith.  This observation is acute when one considers that the AMA Action is a

significant life event for Ms. Roberts and that the only party who stood to gain

from the concealment was the debtor herself. <u>Cf</u>. <u>Krystal Cadillac</u>, 314 F.3d at 321

(rebuttable presumption of bad faith arises if the pleadings demonstrate

knowledge of the claim and a motive to conceal it).

The fact that Ms. Roberts appears to have played "fast and loose" with a bad

faith intent to deceive the Chapter 7 Trustee and this Court does not necessarily mandate that the AMA Action be barred by operation of judicial estoppel. The Court reaches this conclusion because lesser sanctions are available to the Court to redress the misconduct of Ms. Roberts and to protect the integrity of the bankruptcy process.

In <u>Law v. Siegel</u>, the United States Supreme Court noted that bankruptcy courts have the statutory authority pursuant to 11 U.S.C. §105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 571 U.S. 415, 420 (2014).

In <u>Law v. Siegel</u>, the United States Supreme Court also observed that bankruptcy courts possess the statutory power under Rule 9011 of the Bankruptcy Rules (which incorporates Rule 11 of the Federal Rules of Civil Procedure into bankruptcy proceedings), as well as the "inherent power," to sanction abusive litigation practices. <u>See</u> <u>Id</u>. at 420 (quoting <u>Marrama v. Citizens Bank</u>, 549 U.S. at 375-76) and <u>Id</u>. at 427; <u>see also</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991)(holding that federal courts have the inherent power to sanction litigants for bad faith conduct which amount to an abuse of the litigation process).

At the hearing on the *Motion to Reopen*, the Court inquired of counsel as to whether any provision of the Bankruptcy Code precludes the Court from exercising its power to sanction Ms. Roberts for her concealment of the AMA Action, and counsel agreed that nothing in title 11 prevents the Court from

exercising its discretion in this regard.

Since the hearing on the *Motion to Reopen*, the Court conducted its own legal research regarding sanction possibilities against Ms. Roberts and found no case law that prohibits it.

In fact, there are decisions of various bankruptcy courts that have imposed sanctions against debtors, including those who are *pro se*, when the debtor's filings contained material false statements regarding assets, liabilities, and/or income. See, e.g., Matter of Graffy, 233 B.R. 894, 897-98 (Bankr. M.D. Fla. 1999)(*pro se* debtor liable for sanctions when debtor failed to disclose assets and intentionally falsified numerous bankruptcy schedules and statements of financial affairs); In re Dubrowsky, 206 B.R. 30, 36 (Bankr. E.D.N.Y. 1997)(false statements in debtor's schedules and statement of financial affairs give rise to sanctionable conduct under Bankruptcy Rule 9011); and In re Jones, 632 B.R. 138 (Bankr. S.D. Ohio 2021)(*pro se* debtor sanctioned for baseless filings made for the improper purpose of harassment).[10]

Not to be lost in this discussion is the fact that the Court has the statutory power to assess damages against persons who willfully violate the automatic stay.

---

[10]   The United States Trustee is an arm of the United States Department of Justice. As the "watchdog" of the bankruptcy system, and in coordination with the United States Attorney and other law enforcement agencies, the United States Trustee monitors the conduct of private parties and identifies and helps investigate bankruptcy fraud and abuse. See Phoenician Mediterranean v. Swope (In re J&S Properties, Inc.), 545 B.R. 91, 102 (Bankr. W.D. Pa. 2015)(citing H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963). To the extent the United States Trustee is of the opinion that further investigation, action, or relief (including without limitation the imposition of sanctions) is warranted based upon any act or omissions of Ms. Roberts, such a prosecutorial decision by the United States Trustee lies within its discretion.

See 11 U.S.C. § 362(k).[11]

The facts of this case are that the AMA Action is, and has always been, property of Ms. Roberts' bankruptcy estate.  Because the AMA Action is property of the estate, 11 U.S.C. § 362(a) prohibited Ms. Roberts from exercising control over it during the pendency of the bankruptcy case absent leave of this Court pursuant to 11 U.S.C. § 362(d).  But, seeking relief from stay would have required Ms. Roberts to disclose the existence of the lawsuit, which in-turn would have caused the Chapter 7 Trustee to take control of the litigation.

The record reflects that these events did not happen since the existence of the AMA Action was concealed, all the while Ms. Roberts continued to prosecute the action before the state court.  This conduct by Ms. Roberts is a classic example of the usurpation of an estate asset in violation of the automatic stay. See SIPC v. Madoff, 460 BR 106, 114(Bankr. SDNY 2011)(usurpation of lawsuit violated automatic stay); see also AUA Equity Partners, LLC v. Kind Operations, Inc. (In re Pa-Co Man), Bankruptcy No. 20-20422-JAD, 2023 WL 5183542 (Bankr W.D. Pa Aug 11, 2023)(usurpation of cause of action warranted enforcement of the stay and potential sanctions).

In light of the availability of alternative sanctions[12] against Ms. Roberts'

---

[11]  The Chapter 7 Trustee has standing to seek damages for a willful violation of the automatic stay.  See Böhm v. Howard (In re Howard), 428 B.R. 335, 337-38 (Bankr. W.D. Pa. 2011)(relying on Atlantic Business And Community Corporation, 901 F.2d 325 (3d Cir. 1990) and holding that a bankruptcy trustee may seek damages for a willful violation of the stay).

[12]  An additional sanction that is available in some instances is the revocation of the debtor's
(continued...)

conduct, it is this Court's opinion that the application of judicial estoppel is unwarranted– at least as to the Chapter 7 Trustee– under the particular facts and circumstances of this case.

The Court reaches this conclusion because a "court of equity seeks to do justice and not injustice." <u>An-Tze Cheng v. K&S Diversified Investments, Inc. (In re An-Tze Cheng)</u>, 308 B.R. 448, 459 (9th Cir. BAP 2004), <u>aff'd</u> 160 F. Appx. 644 (9th Cir. 2005).  Similarly, a court of equity will not do "inequity in the name of equity." <u>Id.</u> (quoting 27A AM.JUR. <u>Equity</u> § 110 (1996)).

These equitable maxims are pertinent because it is obvious that application of judicial estoppel will accomplish nothing but further AMA's own individualized interest in seeking the dismissal of the AMA Action and injure innocent creditors. As one court observed:

> What is more in this circumstance, the application of judicial estoppel poses a potential risk of harm to innocent creditors.  When a civil claim is dismissed on the basis of judicial estoppel, the asset becomes worthless– losing any potential to increase the value of the bankruptcy estate– which in turn harms creditors. It is easy to see why in Chapter 7 proceedings: the trustee is responsible for liquidating the assets in the estate and then distributing the proceeds to creditors. When the civil claim is dismissed, there can be no proceeds from a recovery or settlement for distribution to creditors. <u>See</u> 11 U.S.C. §§ 704(a)(1), 726.

<u>Slater</u>, 871 F.3d at 1188 (footnote omitted).

----

[12](...continued)
discharge. 11 U.S.C. § 727(d).  The time period, however, for bringing such an action against Ms. Roberts expired. <u>See</u> 11 U.S.C. § 727(e).

Such an outcome encouraged by AMA is less than desirable, and warrants a more nuanced examination of whether judicial estoppel should be applied as a sword against the Chapter 7 Trustee if this case is reopened. See, e.g., An-Tze Cheng, 308 B.R. at 453 ("[t]he dynamic nature of judicial estoppel doctrine warrants proceeding with caution").

Although the Third Circuit has not directly addressed this precise issue,[13] a substantial body of jurisprudence from other circuit courts of appeals and district courts, including within this jurisdiction, informs this Court's analysis.

For example the Sixth Circuit, in Stephenson v. Malloy, 700 F.3d 265, 272 (6th Cir. 2012), held that judicial estoppel was unwarranted as applied to a bankruptcy trustee, emphasizing that it was the debtor's failure to disclose the lawsuit, not any action or representation by the trustee, that gave rise to the alleged inconsist positions. See also Parker v. Wendy Int'l, Inc., 365 F.3d 1268 (11th Cir. 2004)(allowing trustee to pursue undisclosed claims as real party in interest).

Similarly, the Fifth Circuit, in Reed v. City of Arlington, 650 F.3d 571, 576-79 (5th Cir. 2011), underscored the fundamental purpose of the bankruptcy system in ensuring a fair and equitable distribution of assets to creditors. The

---

[13] Krystal Cadillac, supra., applied judicial estoppel against a chapter 11 debtor who concealed a lawsuit and wanted to continue to pursue it after confirmation of its reorganization plan, and did not address whether the same outcome is warranted against a chapter 7 trustee when the chapter 7 trustee is the victim of the debtor's concealment.  Stated in other words, Krystal Cadillac did not address whether judicial estoppel should apply in instances where the bankruptcy fiduciary, who has the rightful and exclusive authority under the Bankruptcy Code to pursue the legal action, was deprived of its ability to administer and manage the litigation.

court reasoned that estopping the trustee would thwart this objective by depriving innocent creditors of potential recoveries. See also Kane v. National Union Fire Insurance Co., 535 F.3d 380, 386-88 (5th Cir. 2008) (holding that "creditors would be harmed [if] judicial estoppel were applied to bar the Trustee from pursuing the claim against the Defendants on behalf of the estate"); Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir. 2006) ("[j]udicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application").

District courts within the Western District of Pennsylvania have also consistently held that it is inappropriate to invoke judicial estoppel against a trustee where prior nondisclosures were made by the debtor and not the trustee. See, e.g., Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681, 692 (W.D. Pa. 2011)(opinion by Lancaster, C.J.)("The trustee and plaintiff's creditors should not be denied the benefit of a cause of action, and potential recovery, due to plaintiff's failure to disclose.  Therefore, plaintiff's conduct will not be used to estop the trustee, who has made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct.") (internal quotation marks omitted); Stramiello-Yednak v. Perl, No. Civ.A. 05-517, 2006 WL 1158123, at *5 (W.D. Pa. Apr. 28, 2006)(opinion by Schwab, J.) ("[B]ecause [the trustee] has never taken inconsistent positions in the courts regarding the existence of the [debtor's undisclosed] claims in this action, he cannot be judicially estopped from pursuing such claims for the benefit of plaintiff's creditors").

Recently, Chief U.S. Bankruptcy Judge Gregory L. Taddonio of this Court recognized that penalizing a trustee for the debtor's misconduct unfairly prejudices creditors and contravenes the equitable principles underlying the bankruptcy process.  Chief Judge Taddonio explained:

> While the Third Circuit has repeatedly estopped debtors who concealed pending or potential claims, a trustee " 'is not tainted or burdened by the debtor's misconduct.' " Otherwise judicial estoppel punishes the wrong party, since " 'creditors should not be denied the benefit of a cause of action, and potential recovery, due to [a debtor's] failure to disclose.' "

In re U Lock, Inc., No. 22-20823-GLT, 2024 WL 878464, at *11 (Bankr. W.D. Pa. Feb. 29, 2024) (quoting Killmeyer, 817 F. Supp. 2d at 692) (footnotes omitted and alteration in original).

In light of the foregoing analysis and given the weight of persuasive authority, this Court concludes that invoking judicial estoppel against the Chapter 7 Trustee in this case would be inappropriate. Doing so would unjustly deprive the debtor's creditors of any potential recovery that could be obtained through the Chapter 7 Trustee's administration of the AMA Action.

While the debtor's failure to disclose the action is wrongful and offensive, the Chapter 7 Trustee's pursuit of the cause of action does not conflict with any prior position she has taken. Therefore, the application of judicial estoppel in this instance against the Chapter 7 Trustee would not serve the interests of justice. See Slater, 871 F.3d at 1187 (declining to apply the doctrine of judicial estoppel in similar circumstances "reduces the likelihood that an otherwise liable civil

-29-

defendant will receive an unjustified windfall or that innocent creditors will be harmed").

## C.
## AMA Lacks Standing

Not forgotten in this discussion of the merits of the *Motion to Reopen* is the fact that AMA is not a creditor of Ms. Roberts and has no claim against the bankruptcy estate.

Given its status as a "stranger" to this bankruptcy, a genuine question exists as to whether AMA has standing to object to the reopening of this bankruptcy case.

In In re Global Indus. Tech., Inc., 645 F.3d 201, 210 (3d Cir. 2011), the Third Circuit Court of Appeals noted that a "party-in-interest" to bankruptcy litigation includes a person or entity that alleges a "specific, 'identifiable trifle' of injury" or a person or entity that has a "personal stake in the outcome of [the] litigation[.]"

While AMA's pleadings are silent on standing, the Court infers that AMA believes it has standing to oppose reopening of this bankruptcy case because it would like to have the AMA Action dismissed.  This position, however, does not support a finding of standing on behalf of AMA because granting the reopening does not adjudicate the merits of the AMA Action.  Rather, as set forth above in this *Memorandum Opinion*, courts have held that reopening a bankruptcy case is a ministerial act that, in and of itself, has no substantive effect.  In re

Frazer/Exton Dev., L.P., 503 B.R. at 635.

Accordingly, AMA suffers neither a "specific" nor "identifiable trifle" of injury to warrant a finding that AMA has a "personal stake in the outcome" of the *Motion to Reopen.*[14] In re Sweeney, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002)(defendant in state court litigation, who was not a creditor, lacked standing to oppose motion to reopen).  For this reason, AMA's objection is stricken for want of standing.

### IV.
### Conclusion

Reopening Mary Ann Roberts' bankruptcy case is warranted to permit the Chapter 7 Trustee to investigate and administer the AMA Action, which was not disclosed by the debtor during the pendency of her case.

Accordingly, the Court shall enter an order that grants the *Motion to Reopen* and directs the appointment of the Chapter 7 Trustee to administer the undisclosed asset for the benefit of creditors.

Dated: May 8, 2024

The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:    Counsel of Record

---

[14]  In In re Pa Co-Man, supra., this Court held that the target of litigation had standing to petition the court to enforce the automatic stay to enjoin the continued prosecution of a lawsuit against it.  In that case, the Court determined that the target suffered sufficient injury to warrant standing in that the target had the needless expense of defending two separate lawsuits asserting the same cause of action– i.e., one lawsuit prosecuted by the bankruptcy representative and another that was being prosecuted *ultra vires*. The instant matter before this Court is distinguishable from In re Pa Co-Man in that unlike the target of litigation in that case, AMA is not the subject of multiple lawsuits.  Rather, the net effect of reopening of this case, is that the Chapter 7 Trustee will simply be substituted for Ms. Roberts (which is the precise place AMA would have been had Ms. Roberts appropriately disclosed the existence of the lawsuit).